UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Federal Trade Commission, *Plaintiff*, v. Day Pacer LLC, et al. *Defendant*. | No. 19 CV 1984 Judge Lindsay C. Jenkins |

ORDER

Before the Court is Defendant Margaret Cumming's memorandum, [Dkt. 301], regarding the amount of civil penalties the Court should award after granting summary judgment in favor of the FTC for Defendants' violations of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(b)(1)(iii)(B), which is promulgated under the Telemarketing Act, 15 U.S.C. §§ 6101–6108. Ms. Cumming brings this memorandum in her capacity as the personal representative of the estate (the "Estate") of David Cumming ("Cumming"), a Defendant who passed away while summary judgment was pending.[1]

In its summary judgment order, the Court held the individual defendants, including Cumming, could be held personally liable for the TSR violations, [Dkt. 280 at 51-56][2], and noted that it was inclined to adopt the FTC's proposal for $28,681,863.88 in penalties over Defendants' arguments. [*Id.* at 60.] The Court came to this conclusion after making several findings regarding Defendants', including Cumming's, knowledge of and culpability in the wrongdoing, as well as the scope of the misconduct, which included millions of calls in violation of the TSR. Before entering judgment, however, the Court decided to hold a hearing to gather "more information about Defendants' ability to pay and the effect any penalty would have on an ability to continue to do business." [*Id.* at 60-61.]

At the hearing, the Estate requested additional time to file a written brief setting out its position on the appropriate civil penalty. The Estate argued it had distinct interests and arguments on remedies separate from Cumming. The Court hesitantly granted the request after receiving assurances that the Estate was not

---

[1] Despite having no authorization to do so, the remaining Defendants in the action (Day Pacer LLC, Edutrek L.L.C., Ian Fitzgerald and Raymond Fitzgerald) filed a notice joining in the motion. [Dkt. 302.] Because the Court denies the Estate's requested relief, the joinder issue is moot.

[2] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

attempting to reopen issues decided in the summary judgment order [*See* Dkt. 291 at 6-24.] Having considered the Estate's brief, [Dkt. 301], and the FTC's response, [Dkt. 305], the Court concludes a civil penalty in the amount of $28,681,863.88 is appropriate and will enter judgment to that effect.

The Estate's brief makes arguments on several issues—including Cumming's knowledge of the wrongdoing and overall culpability—that were already decided in the Court's summary judgment order. [*See* Dkt. 301 at 5-8.] As the Court made clear at the hearing, this brief was not an invitation for reconsideration, and the Court declines to revisit those findings. The Estate's arguments regarding its relation to Cumming, as well as its penalty calculation methodologies, however, warrant analysis as they both impact the imposition of civil penalties.

When determining what civil penalty is appropriate for violations of the FTC Act, courts "shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require." 15 U.S.C. § 45(m)(1)(C). Moreover, courts should "start from harm rather than wealth, then add an appropriate multiplier" to ensure the penalty awarded is constitutionally sound. *United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020).

As noted above, the Court's summary judgment order already applied these factors to Cumming. Permeating throughout the Estate's brief, however, is the notion the Court should apply these factors to the Estate, as opposed to Cumming. [*See e.g.,* Dkt. 301 at 5 ("The Estate (and its constituents) are innocent, and no one says otherwise. This should end the analysis with respect to this [culpability] factor"); *id.* at 7 ("There is no evidence that either the Estate or David engaged in prior misconduct").] The Estate does not cite to any authority for why its conduct should be scrutinized as opposed to Cumming's.

This is perhaps because the Estate's argument does not pass legal scrutiny. The Court substituted the Estate as a party under Rule 25(a)(1), finding that Cumming's TSR violations survive his death and should pass to his estate. [Dkt. 280 at 10-22.] A substituted party "tracks the positions of the original litigants", including the "substantive claims" raised or defended by the initial party. *Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc.*, 53 F.3d 851, 852 (7th Cir. 1995); *see also Abellan v. HRDS Le Roy IL, LLC*, 2020 WL 10355049, at *2 (C.D. Ill. June 19, 2020) (under "Rule 25(a)(1), the substituted party steps into the same position as the original party to the action.") In no way does the conduct of a substituted party become relevant or impact the liability of the initial party. If it did, it is hard to imagine how a substituted

party could ever be found liable of the underlying claims. This is particularly true for an estate, which does not have the capacity to act.[3]

Having determined the Estate's conduct is not applicable to assessing the appropriate civil penalty, the Court turns to the Estate's argument that the FTC's methodology for calculating the penalty is flawed, and should be replaced by one of two options supplied by the Estate. [Dkt. 301 at 12-16.] The FTC's proposed penalty of $28,681,863.88 is derived from the gross revenue the defendant companies earned from the TSR violations, which comes out to $6.88 per call. [Dkt. 280 at 58.] According to the Estate, this is incorrect because a court should "start from harm" and then add a multiplier when fashioning a civil penalty. *Dish Network*, 954 F.3d at 980. Relying on a law review article, the Estate posits that the harm caused by telemarketing calls is only $.113 per call. [Dkt. 301 at 4.] Rounding that figure up to $.12 per call, the Estate argues the harm is $500,221 (4,168,511 calls x .12) and with a multiplier of 3 equals $1,500,663. However, because Cumming was not as culpable as other defendants, his (and therefore the Estate's) portion of the penalty should only be $150,066. [*Id.* at 15.]

In the alternative, the Estate asks the Court to apply a penalty of $2.54 per call, which was the rate used by the district court in *Dish Network*. This math, after taking into consideration the multiplier and Cumming's purported reduced culpability, would equate to $1,058,802 in penalties for the Estate. [*Id.* at 15-16.]

While the Court appreciates the Estate's proposals, it disagrees with its interpretation of *Dish Network* to mean that harm should replace the factors proscribed in 15 U.S.C. § 45(m)(1)(C) for fashioning a civil penalty. Rather, the Court reads *Dish Network* to say that the harm with multiplier process is a mechanism to ensure that the given penalty is within constitutionally acceptable limits. *See Dish Network*, 954 F.3d at 980 ("We appreciate that the district judge tried to ensure that the penalty was within a constitutionally allowable range, but the best way to do this is to start from harm rather than wealth, then add an appropriate multiplier.") Here, the Court declines to adopt a blanket per call harm of $.12 based on a single law review article completely divorced from the facts of this case. Likewise, the Court is unpersuaded that the $2.54 per call harm applied in *Dish Network* has any applicability here.

Conversely, the methodology supplied by the FTC has a reasonable connection to the Section 45 factors—basically, given the scope of Defendants' TSR violations, their knowledge of those violations, and the high culpability in trying to mask those violations, all revenue from those calls should be forfeited as a civil penalty. This comes out to $6.88 per call, which is well within range for the difficult-to-quantify

---

[3] The Estate claims that its business is to "fulfill the decedent's wishes and to ensure the decedent's heirs and legatees are provided for." [Dkt. 301 at 8-9.] But as the FTC notes, an estate is required first to pay "all claims entitled to be paid therefrom." [Dkt. 305 at 13.]

3

harms caused by TSR violations. *Parchman v. SLM Corp.*, 896 F.3d 728, 740 (6th Cir. 2018) (holding $500 per call is not "wholly disproportionate to the harm suffered as a result of receiving these irritating and invasive calls, especially where the harm is hard to quantify and may vary significantly from person to person.")

      The Court concludes $28,681,863.88 is the appropriate civil penalty, which applies jointly and severally to all Defendants as decided in the summary judgment order.

Enter: 19-cv-1984
Date: January 16, 2024

_____
Lindsay C. Jenkins
United States District Judge